UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES BASTON,　　　　　　　　　　　　　　　　　MEMORANDUM & ORDER
　　　　　　　　　　　　　　　　　　　　　　　　　　　08 CV 3425 (RJD)
　　　　　　　　Petitioner,

　　-against-

DALE ARTUS,

　　　　　　　　Respondent.
----------------------------------------------------------X

DEARIE, Chief Judge.

　　Pro se petitioner James Baston seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his application is denied, and the petition is dismissed.

## BACKGROUND

　　Petitioner and co-defendant Wayne Mathews were convicted, after a jury trial, of the 2002 felony murder of Stanley Joyner at the Louis H. Pink public housing complex in Brooklyn. They were convicted primarily on the eyewitness testimony of Devon Brown, Joyner's best friend. Brown testified that he, Joyner, and Paul Johnson were in the middle of the housing complex discussing their plans for the weekend when petitioner, Mathews, and several other individuals approached. Brown knew Mathews and petitioner from the neighborhood. As petitioner and Mathews approached, they each took out a gun. Mathews told the three friends "don't run." Joyner, who was wearing several pieces of jewelry, including a white gold necklace, ran. Petitioner, Mathews, and the others in their group chased him. Mathews shot at Joyner, hitting Joyner once in the back and twice behind his left knee. Joyner died instantly. Petitioner, still holding his gun, approached Joyner and picked up the necklace that Joyner had tried to take off as he ran. Petitioner, Mathews, and the others then fled. Paul Johnson, who, like

Brown, knew petitioner and Mathews from the neighborhood, also testified that petitioner and Mathews approached carrying guns and chased Joyner.

Petitioner was sentenced to a term of twenty years to life. His conviction and sentence were affirmed by the Appellate Division, People v. Baston, 40 A.D.3d 775, 836 N.Y.S.2d 622 (2nd Dept. 2007), and the Court of Appeals denied leave to appeal on August 21, 2007, People v. Baston, 9 N.Y.3d 872 (2007). This petition followed.

## DISCUSSION

Petitioner advances the same four claims on this petition as he did on his direct appeal. Specifically, petitioner argues that: (1) the trial judge violated his right to a fair trial when she replaced a deliberating juror with an alternate juror without first obtaining his written consent; (2) the prosecutor's remarks during summation deprived him of a fair trial; (3) the trial judge improperly precluded defense counsel from cross-examining Devon Brown about the "timeline" of events on the evening of the murder; and (4) defense counsel provided ineffective assistance of counsel in failing to persuade the trial judge to allow the cross-examination. None of his claims warrants habeas relief.

It is well established that a "habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court." Thomas v. West, 2007 WL 541476, at *11 (S.D.N.Y. Feb. 22, 2007) (citing Herrera v. Collins, 506 U.S. 390, 401 (1993)). "Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Id. (quoting 28 U.S.C. § 2254(a)). Petitioner "therefore bears the burden of proving, by a preponderance of the evidence, that his rights have been violated." Id. (citing Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)). In addition, where the state court has denied a claim on the merits, a writ of habeas corpus will not be granted unless the state court proceedings:

2

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Mercedes v. McGuire, 2010 WL 1936227, at *4 (E.D.N.Y. May 12, 2010) (citing 28 U.S.C. § 2254(d) (1), (2)). The Court must grant considerable deference to the prior determinations of the state court on issues of law and fact. See Tavarez v. New York, 2008 WL 2775810, at *4 (S.D.N.Y. July 14, 2008) (citing Uttecht v. Brown, 555 U.S. 1, 9-10 (2007)).

I.  Substitution of Juror No.6

Petitioner's claim that the trial judge erred in dismissing a regular juror, Juror No. 6, after the start of deliberations without first obtaining his written consent in violation of his right to a fair trial under New York Criminal Procedure Law § 270.35 and Article I, Section 2 of the New York State Constitution is not a basis for federal habeas relief. The writ is available only when the petitioner establishes that he is in custody in violation of the Constitution or laws or treaties of the United States. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."); Policano v. Herbert, 453 F.3d 79, 92 (2d Cir. 2006) ("It is well established that a federal habeas court may not second-guess a state court's construction of its own law." (citing Estelle)).

To the extent that petitioner claims that the trial judge's substitution of Juror No. 6 violated his federal constitutional right to a fair trial, he fares no better.[1] As an initial matter,

---

[1] Respondent argues that petitioner did not allege in his state court proceedings that the trial judge's substitution of Juror No. 6 violated his federal constitutional right to a jury trial and that

3

petitioner's contention that deliberations had already started when the trial judge dismissed Juror No. 6 is foreclosed by the Appellate Division's finding that deliberations had not begun, see Baston, 40 A.D.3d at 775, as petitioner has failed to come forward with clear and convincing evidence that the Appellate Division's conclusion was erroneous, see Assadourian v. Brown, 2009 WL 2135297, at *8 (S.D.N.Y. July 16, 2009) ("[A]ny determination of a factual issue made by a state court is presumed correct unless the Petitioner can demonstrate by clear and convincing evidence that the state court's determination was erroneous." (citing 28 U.S.C. § 2254(e)(1), Leka v. Portuonda, 257 F.3d 89, 98 (2d Cir. 2001)).

In any event, regardless of whether or not deliberations had begun when Juror No. 6 was dismissed, habeas relief is not warranted. Federal law provides that the "[s]ubstitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." Shepard v. Artuz, 2000 WL 423519, at *5 (S.D.N.Y. Apr. 19, 2000) (quoting United States v. Millar, 79 F.3d 338, 342 (2d Cir. 1996) (citations omitted)). The record reflects that immediately after charging the jury on the afternoon of Thursday, January 15, the trial judge discussed with counsel her concern that Juror No. 6, a college student, needed to return to school on Sunday, January 18. After Juror No. 6 confirmed that she had no choice but to return to school on January 18, the trial judge dismissed her to avoid any chance that she would feel rushed into reaching a verdict and replaced her with the first alternate juror. Based on

---

the Court therefore does not have jurisdiction over the claim on habeas review. The Court disagrees: although petitioner did not refer to the Sixth Amendment in his state court proceedings "[a]llegations of improper juror dismissal evoke the Sixth Amendment right to an impartial jury and the Fourteenth Amendment right to due process. Accordingly, the state courts were appraised of the federal constitutional issues involved with the petitioner's juror dismissal claims and the issue is exhausted." Carrasco v. David, 2002 WL 1205750, at *5 (S.D.N.Y. June 4, 2002); see also Johnson v. Conway, 2008 WL 2405709, at *6 (N.D.N.Y. June 11, 2008) (citing Carrasco)).

4

this record, the Court cannot say that the trial judge abused her discretion in dismissing Juror No. 6.

Even if the trial judge erred in dismissing Juror No. 6, habeas relief would not be warranted as petitioner does not allege, let alone establish, that he was prejudiced by the substitution. See e.g., United States v. Jones, 763 F.2d 518, 523 (2d Cir. 1985) (holding that juror substitution after start of deliberations did not require reversal absent a showing of prejudice); Thomas, 2007 WL 541476, at *15 (petitioner did not show that the "replacement juror had any bias against him and is, therefore, unable to show that he was prejudiced by the substitution. It follows that [petitioner's] due process rights were not violated by the decision to replace the juror" (citing generally United States v. Amiel, 95 F.3d 135, 146 (2d Cir. 1996) (defendant is entitled to a fair, not a perfect, trial)); Shepard, 2000 WL 423519, at *6 (S.D.N.Y. Apr. 19, 2000) ("Without proof of actual prejudice, any error on the part of the trial court [in discharging a juror] was harmless." (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Accordingly, petitioner's juror dismissal claim does not warrant habeas relief.

II.  Prosecutor's Summation

Petitioner next argues that remarks made by the prosecutor during summation deprived him of a fair trial. Specifically, petitioner argues that the prosecutor: (1) denigrated him by likening him to a "buzzard or some other bird that swoop[ed] out of the sky" to steal Joyner's necklace; (2) impugned defense counsel in front of the jury by referring to defense counsel's theory that Devon Brown did not actually witness Joyner's murder but was merely repeating rumors he had heard as "nonsense"; and (3) shifted the burden of proof to the petitioner by claiming that there was no "evidence" to support the defense's theory that there "was no robbery" and that Joyner was killed by someone other than petitioner and Mathews to "settle a

5

beef." The Appellate Division rejected these claims on the merits, concluding that when: "[v]iewed in the context of the entire summation and trial . . . the challenged remarks were fair response to the defendant's summation . . . fair comment on the evidence . . . or harmless in light of the overwhelming evidence of the defendant's guilt and the court's curative instructions." Baston, 40 A.D.3d at 776 (internal citations omitted). The Court concludes that the Appellate Division's rejection of petitioner's claims was not contrary to or an unreasonable application of existing Supreme Court law.

Petitioner's claim that he is entitled to habeas relief because the prosecutor denigrated him by calling him a "buzzard or some other bird that swoops down out of the sky" (T. 828) is easily dismissed. As an initial matter, respondent contends that the trial transcript is inaccurate and that the prosecutor argued during summation that Baston was *not* a buzzard:

> [Baston] just *didn't* swoop down out of the sky to take a piece of jewelry from a corpse. He went after Stanley and took the jewelry because James Baston had been down with the robbery from the get-go and that jewelry that James Baston took was the grand prize that they had been trying to get.

(T. 828.) (emphasis supplied). In any event, whether the prosecutor called petitioner a buzzard or argued that he was not a buzzard, the remarks are "far from the type of comments 'designed to appeal to the jury's emotions,' or to 'inflame the passion or prejudices of the jury,'" Summa v. Plescia, 2008 WL 1818794, at *8 (E.D.N.Y. Apr. 22, 2008) (quoting United States v. Peterson, 808 F.2d 979, 977 (2d Cir. 1987)), and are not comparable to those found to be 'clearly improper' by courts in this circuit," id. (internal citations omitted). The same holds true for the prosecutor's remarks that defense counsel's theories were "nonsense," that there was "no evidence" to support them, and that defense counsel was "trying to sell you a theory." At most, these remarks were merely "rhetorical devices limited to initial remarks prefacing the

6

prosecutor's response to defense counsel's" theory of the case. Id. (citing Peterson, 808 F.2d at 977.

Moreover, under settled Supreme Court law, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 180 (1986). Rather, habeas relief is justified only if the remarks are "egregious" and "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Thus, the remarks must be "so prejudicial that they rendered the trial in question fundamentally unfair.'" Summa, 2008 WL 1818794, at *9 (quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990)). In determining whether a prosecutor's remarks caused "substantial prejudice," the Court must consider the "severity of the misconduct[,] the measures adopted to cure the misconduct[,] and the certainty of conviction absent the improper statements." Id. (citing Floyd, 907 F.2d at 355).

When viewed in the context of the trial as a whole, the prosecutor's remarks were not so severe that they prejudiced petitioner. Whatever minimal prejudicial effect the remarks may have had was mitigated by the trial judge's thorough jury instructions -- which the jury is presumed to follow, see Council v. Connell, 2010 WL 1140879, at *7 (S.D.N.Y. Mar. 25, 2010) (citing Weeks v. Angelone, 528 U.S. 225, 234 (2000)) -- that:

- (1) the jury was "not required to accept the arguments made by any of the attorneys on summation" (T. 901);

- (2) "summations are not part of the case and will not be read back to you and should not be relied upon as evidence" (T. 901);

- (3) the petitioner's decision not to testify "is not a factor from which any inference unreasonable to [him] may be drawn" (T. 916);

- (4) "the burden of proving guilt rests solely upon the prosecution [and] never shifted to the defendant" (T. 927); and

7

(5) the government bears the burden of proving that the defendant committed each element of the charged offense beyond a reasonable doubt (T. 927).

Finally, the Court is convinced that absent the prosecutor's remarks, petitioner would have still been convicted on the eyewitness testimony of Brown and Johnson, both of whom were thoroughly cross-examined by petitioner's counsel as well as separate counsel for co-defendant Mathews. Because the Appellate Division's determination was not contrary to settled Supreme Court law, federal habeas relief is not warranted.

## III. Confrontation Clause / Ineffective Assistance of Counsel

Petitioner next claims that he was deprived of his Sixth Amendment right to confront his accuser when the trial judge denied his request to cross-examine Devon Brown regarding the "timeline" of events leading up to Joyner's murder. Piggybacking on his Confrontation Clause claim, petitioner claims that his counsel provided ineffective assistance of counsel in failing to convince the trial judge why cross-examination was necessary. The Appellate Division found these claims to be "without merit" and the Court finds that that rejection was not contrary to or an unreasonable application of controlling Supreme Court law.

*A. Confrontation Clause*

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, . . . guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir. 1994) (citation omitted). As petitioner concedes, however, the right is not absolute and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

8

While petitioner claims that the trial judge refused to allow counsel to cross-examine Brown regarding the timeline of events, the trial transcript indicates that defense counsel did cross-examine Brown extensively about what happened, exposing, among other things, inconsistencies among Brown's statements to detectives on the night of the murder, his grand jury testimony, and his trial testimony. What petitioner is really complaining about is the trial judge's refusal to allow counsel to cross-examine Brown on his direct testimony that half an hour before he met Joyner he noticed petitioner and Mathews walking around the housing complex. The following exchange occurred on direct examination:

> Q: Now, the four people who you recognized, Wayne [Mathews], [petitioner], Raquel, and T --
>
> A: Yes.
>
> Q: -- had you seen any of those before on that same day?
>
> A: Yes.
>
> Q: Okay. When and where?
>
> A: I seen them about half an hour before Stanley came the same day.
>
> Q: Where did you see -- Which guys did you see?
>
> A: Before I saw Wayne [Mathews], [petitioner], Raquel, T they had another kid named Nu-Nu with them and they was coming up between building seven and building eight. And when they came up the path, I was standing in a circle with everybody else. They just looked and we was talking, came, went up the path between building one and kept on going.
>
> Q: Okay. Did you have any conversation with Wayne [Mathews] or [petitioner] or Raquel or T or Nu-Nu at that time?
>
> A: No.

(T. 81-82.)

On cross-examination, petitioner's counsel attempted to elicit testimony from Brown concerning why he had noticed petitioner and Mathews walking around the complex half an hour before Joyner arrived:

> Q: Now, so you're talking [with Joyner for] 15 to 20 minutes and you say you saw some people coming between – a group of people coming between building seven and eight; is that right?
>
> A: No.
>
> Q: I mean two and eight?
>
> A: Right.
>
> Q: Was that unusual? People coming between buildings?
>
> A: No.
>
> Q: So what -- and there were a lot of people out, right?
>
> A: Yes.
>
> Q: Why did you take particular notice of these people?
>
> A: Because I know them. They had just come through earlier.
>
> Q: Well, a lot of people came through earlier, didn't they?
>
> A: Right.
>
> Q: Well, was there anything unusual about them coming through earlier?

(T. 162-63.)

Before Brown could answer, counsel for co-defendant Mathews objected, arguing that it was his belief that, based on Brown's prior statements to the police, Brown would likely testify that he noticed petitioner and Mathews walking through the housing complex half an hour earlier because he thought they were "up to no good." Mathews' counsel argued that testimony to that effect would prejudice his client, and that the testimony should not come in. The trial judge

10

sustained the objection, ruling that why Brown noticed petitioner and Mathews half an hour earlier was irrelevant in light of Brown's testimony that petitioner and Mathews approached Joyner, chased him, and killed him. The trial judge also ruled that if Brown, as expected, were to testify that he noticed petitioner and Mathews because he thought they were up to no good, that testimony would prejudice the defendants. Under the circumstances, the Court cannot say that the trial judge erred in precluding cross-examination on this limited issue, and petitioner's request for habeas relief on Confrontation Clause grounds is denied.

*B. Ineffective Assistance of Counsel*

To establish an ineffective assistance of counsel claim, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that he was prejudiced as a result. See Strickland v. Washington, 466 U.S. 668, 688 (1984). Because the trial judge did not err in limiting cross-examination, petitioner cannot show that the Appellate Division's rejection of this claim was contrary to or an unreasonable application of Supreme Court law.

## CONCLUSION

For the reasons stated above, the application for a writ of habeas corpus is denied, and the petition is dismissed. A certificate of appealability will not issue. In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 3, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge